

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TIERNEY L. MURDOCK,<br>    PLAINTIFF, | § § § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-327-Y |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    DEFENDANT. | § § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Tierney L. Murdock ("Murdock"), filed concurrent applications for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income disability benefits ("SSI") on October 31, 2005, alleging a disability onset date of October 26, 2005. (Transcript ("Tr.") 75, 421.)[1] The applications were denied initially on December 28, 2005 and again on reconsideration. (Tr. 32, 64, 407, 411.) Murdock timely requested a hearing before an

---

[1] The relevant time period for Murdock's DIB application is October 26, 2005, her alleged onset date, through September 30, 2006, her last insured date, while the relevant time period for her SSI application is October 27, 2005, her protective filing date, through April 25, 2008, the date of the ALJ's decision. (Tr. 13, 89.) Thus, Murdock must establish disability on or before September 30, 2006 in order to be entitled to DIB, and on or before April 25, 2008 in order to be entitled to SSI. *See* 20 C.F.R. §§ 404.131, 416.330.

1

administrative law judge ("ALJ"), and a hearing was held on December 11, 2007 in Fort Worth, Texas before ALJ J. Frederick Gatzke, followed by a supplemental hearing on April 1, 2008. (Tr. 12, 22-28, 440-470.)

In her October 2005 applications, Murdock claimed disability due to a number of impairments including back and knee problems and hypertension. (Tr. 417.) On April 25, 2008, the ALJ issued a decision finding that she was not disabled. (Tr. 12-21.) The Appeals Council denied Murdock's request for review on April 6, 2009. (Tr. 4-6.) Murdock subsequently filed the instant action in federal court on June 9, 2009. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets

or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417

(5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

## III. ISSUE

Whether the ALJ's determination that Murdock does not have a severe mental impairment is supported by substantial evidence.

## IV. ADMINISTRATIVE RECORD

A.   Background and Vocational History

Murdock was born on September 9, 1957. (Tr. 75.) She has a high school education. (Tr. 99.) Her past relevant work included jobs as a shipping/receiving clerk, a claims representative, a customer service coordinator, a unit clerk, and a check point person. (Tr. 19, 80, 466-68.) Murdock has not engaged in substantial gainful activity at any relevant time through the date of the ALJ's decision. (Tr. 13, citing 20 C.F.R. §§ 404.1520, 416.920.)

B.   Relevant Treatment History[2]

On June 7, 2006, Murdock underwent a Comprehensive Mental Status Evaluation ("CMSE") at the psychiatric department of John Peter Smith Health Network ("JPS") for issues relating to her anxiety. (Tr. 234-38.) At that time, Murdock reported that she had anxiety related to her back and knee pain, she was experiencing sleeplessness, and she had financial concerns. (Tr. 234A.) The JPS psychiatrist noted that Murdock had a neat appearance and made good eye contact. (Tr. 237.) She was found to be alert, well-oriented, and cooperative, with fair concentration and fair judgment. (*Id.*) No abnormalities concerning her memory, intellectual faculties, or thought processes were observed. (*Id.*) Several of Murdock's symptoms, including

---
[2] Because Murdock's arguments in her brief relate solely to issues relating to her mental impairment, the Court will review only the medical evidence relating to such impairment.

4

her depression, anxiety, and interest level, were rated as more than moderate but not extreme. (*Id.*) The psychiatrist found that Murdock's symptoms moderately affected her daily activities, relationships, and social functioning. (*Id.*) He assessed a Global Assessment of Functioning ("GAF")[3] score range of 41-50,[4] diagnosed Murdock with a mood disorder, and prescribed Celexa and Xanax. (Tr. 238.)

In a Psychiatric Review Technique Form dated July 7, 2006, State Agency medical consultant Cate Miller, M.D. ("Miller"), opined that Murdock suffered from a mood disorder secondary to a general medical condition. (Tr. 113, 116.) Miller stated that this impairment fell under Section 12.04 of the Listing, but that it did not precisely satisfy the diagnostic criteria of the Listing. (Tr. 116, 123.) Miller found that Murdock had mild difficulties maintaining concentration, persistence, or pace, moderate difficulties maintaining social functioning, and moderate restriction in her activities of daily living. (Tr. 122.) Miller further determined that Murdock had one or two episodes of decompensation, each of extended duration. (*Id.*) Miller concluded that a Mental Residual Functional Capacity Assessment was necessary. (Tr. 113.)

In a MRFC dated the same day, Miller found that Murdock was moderately limited in her ability to: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and

---

[3] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) ("DSM-IV").

[4] A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34.

workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) accept instructions and respond appropriately to criticism from supervisors; and (7) respond appropriately to changes in the work setting. (Tr. 109-110.) Miller explained that Murdock could "understand, remember, and carry out detailed but not complex instructions." (Tr. 111.)

Beginning in September 2006, Murdock had follow-up visits with the psychiatric department of JPS at three-month intervals through September 2008. (*See* Tr. 234-60, 396-405, 427-39.) The JPS records indicate that Murdock maintained a neat appearance and remained alert, well-oriented, and cooperative over the course of her treatment. (Tr. 242, 246, 250, 254, 259, 398, 402, 429, 434, 438.) Her concentration and judgment were consistently rated as fair. (*Id.*) No abnormalities were ever observed regarding her memory, intellectual faculties, or thought processes. (*Id.*) The records also show that Murdock consistently denied suicidal or homicidal thoughts. (*Id.*)

After her initial psychiatric exam in June 2006, Murdock's symptoms decreased from, and remained below, moderate levels for the duration of her treatment, sometimes disappearing altogether. (*Compare* Tr. 237, *with* Tr. 242, 246, 250, 254, 259, 398, 402, 429, 424, 438.) Additionally, JPS psychiatrists determined that, beginning in September 2006, Murdock's daily activities, relationships, and social functioning were no longer moderately affected by her symptoms and at times were not affected at all. (*Id.*) When assessing Murdock's mental status, the psychiatrists repeatedly opined that she was stable on her medications or responding well to them. (Tr. 247, 251, 255, 260, 399, 439.)

At her first follow-up visit in September 2006, Murdock reported that she felt depressed and anxious. (Tr. 259.) Her affect was recorded as inappropriate and constricted, while her mood was recorded as moderately depressed. (*Id.*) Murdock stated that she had not had any crying breakdowns since being prescribed Celexa and stated that the drug "puts [her] in a better state of mind." (*Id.*) The JPS psychiatrist assessed Murdock's GAF score at 60[5] and increased her Celexa prescription. (Tr. 260.)

In December 2006, Murdock reported feeling better, but she expressed concerns about the sexual side effects of her medication. (Tr. 254.) The JPS psychiatrist indicated that Murdock's affect was appropriate and that her mood was normal. (*Id.*) He then rated Murdock's GAF score as 65[6] and added Wellbutrin to her medications. (Tr. 255.)

At her February 2007 visit, Murdock reported that she was anxious because her mom had an inoperable aneurysm and funeral arrangements were being made. (Tr. 250.) The JPS psychiatrist described Murdock's affect as inappropriate and her mood as angry. (*Id.*) He then assessed her GAF score at 65. (Tr. 257.)

In May 2007, Murdock reported that she was feeling better and denied symptoms of anxiety and depression. (Tr. 246.) The JPS psychiatrist indicated that Murdock was not exhibiting symptoms and that she had an appropriate affect and normal mood. (*Id.*) Inexplicably, he assessed Murdock's May 2007 GAF score at 55. (Tr. 243, 247.)

---

[5] A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). DSM-IV at 34.

[6] A GAF score of 61 to 70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful relationships. DSM-IV at 34.

At her August 2007 visit, Murdock stated that she was feeling better and that her anxiety and depression symptoms had improved. (Tr. 242.) The JPS psychiatrist indicated that Murdock was not exhibiting symptoms and that she had an appropriate affect and normal mood. (*Id.*) He then rated Murdock's GAF score as 60. (Tr. 243.)

During her November 2007 visit, Murdock was feeling depressed and anxious. (Tr. 402.) She spoke of her back and knee pain, her upcoming social security hearing, and fighting with her mother. (*Id.*) The JPS psychiatrist found that she had an inappropriate affect and a mildly depressed mood. (*Id.*) According to the record, Murdock's GAF score was unavailable. (*Id.*)

In January 2008, Murdock reported that she was "doing good" and that she was satisfied with her treatment. (Tr. 398.) The JPS psychiatrist upgraded her affect to appropriate and her mood to normal. (*Id.*) Murdock's GAF score was assessed at 60. (Tr. 399.)

At her April 2008 visit, Murdock denied symptoms of depression or anxiety. (Tr. 438.) The JPS psychiatrist indicated that Murdock's affect remained appropriate and her mood remained normal. (*Id.*) He again rated her GAF score as 60. (Tr. 438-39.)

C.  Administrative Hearings

The ALJ scheduled a supplemental hearing after learning at the beginning of the December 11, 2007 hearing that the consulting medical expert did not have all the relevant medical records. (Tr. 23-28.) At the supplemental hearing before the ALJ on April 1, 2008, Murdock testified that she was fifty years old and had completed the 12th grade. (Tr. 443.) She stated that she lived alone in a house owned by her mother and that her mother supported her financially. (*Id.*) She then testified that though she was taking antidepressants as prescribed, she felt depressed and anxious all the time. (Tr. 453, 455.) She stated that she had difficulty

8

concentrating, focusing, or remembering things, and that she cried in the closet at least once a week. (Tr. 454.) She denied having any social activities, stating that she only left the house to go to doctors' appointments or to the grocery store. (*Id.*) Murdock also testified that she did not get along well with family and friends and that she could not remember her interactions with coworkers and supervisors, because she had been out of work for six years. (Tr. 454-55.) When asked how she dealt with change in her daily routine, she responded that she often wore pajamas and house shoes out rather than get dressed. (Tr. 455.) She reported that she was only able to sleep for about three hours at a time because of anxiety and the pain related to her physical impairments. (Tr. 456.) She further testified that everything in her life caused her stress and that lately she had thought about harming herself. (Tr. 457.)

Murdock testified that the JPS records indicating that she did not have any suicidal thoughts in November 2007 or January 2008 were accurate. (Tr. 457-58.) When asked what had changed since January 2008, she stated that she was very frustrated that she still had to depend on her mother. (Tr. 459.) She then testified that she had been on the medications Wellbutrin, Celexa, and Xanax for quite some time, and that her side effects included depression, problems with focusing, and difficulty carrying on an intelligent conversation. (Tr. 460.) She confirmed that she had complained of the sexual side effects from Celexa during her JPS visit in December 2006. (Tr. 461.) She then testified that she had a boyfriend that she saw once or twice a week, stating that he provided her with emotional support. (Tr. 461-62.)

Carol Bennett ("Bennett"), a vocational expert ("VE"), also testified at the supplemental hearing. (Tr. 465-69.) The ALJ asked Bennett to consider whether Murdock could perform any of her prior work if she was limited to work at a sedentary level, with no more than frequent use

of her upper extremities, and no exposure to extreme cold weather. (Tr. 467-68.) Bennett testified that Murdock would still be able to perform her past work as a customer service coordinator, which has a specific vocational preparation ("SVP") level[7] of 5, and as a claims representative, which has an SVP level of 7. (*Id.*) The ALJ then asked Bennett to consider whether Murdock could perform either job if she was further limited to work only at the lower end of the detailed work instructions. (Tr. 468.) Bennett testified that Murdock would not be able to perform either job. (Tr. 468.)

D.  The ALJ's Decision

In entering his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 12-21); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ found that Murdock was fully insured from the time she alleged her disability began through September 30, 2006. (Tr. 20.) He also found that she had not engaged in substantial gainful activity since October 26, 2005. (*Id.*); 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the ALJ determined that Murdock had the following severe impairments: bilateral patellofemoral pain syndromes, with soft tissue injuries and chronic, bilateral knee pain; obesity; hypertension; and histories of bilateral carpal tunnel and irritable bowel syndromes. (Tr. 20.)

---

[7] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* Dictionary of Occupational Titles app. C (rev. 4th ed. 1991). Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p. *See generally* 20 C.F.R. §§ 404.1568, 416.968.

The ALJ also determined that Murdock's mood disorder was a non-severe mental impairment. (*Id.*) In reaching this determination, the ALJ applied the *de minimis* severity standard set forth by the Fifth Circuit in *Stone*. (Tr. 19, citing *Stone*, 752 F.2d 1099 (5th Cir. 1985), 20 C.F.R. §§ 404.1521, 416.921, and Social Security Rulings 85-28 and 96-3p.) The ALJ evaluated Murdock's testimony along with the medical opinions of her treating psychiatrists and the State Agency physician when assessing the severity of her mental impairment. (Tr. 15, 17-19.)

Assessing Murdock's credibility, the ALJ found that "Murdock's testimony and other statements concerning her subjective complaints and functional limitations were not credible or reasonably supported by the findings of the objective medical evidence or inferences therefrom." (Tr. 17.) He specifically cited Murdock's inconsistent testimony concerning her social life, and the discrepancies between the JPS records and her testimony concerning her suicidal inclinations. (*Id.*)

The ALJ considered Murdock's treatment history at JPS, finding that the records through January 2008 show that "she quickly responded to the routine care and medications and stabilized at a very functional level." (Tr. 19.) He also considered Miller's opinion that Murdock's mental impairments were severe and limited her ability to understand, remember, and carry out complex instructions. (Tr. 18.) The ALJ found, however, that "in light of the additional evidence before [him]," Miller's opinions were not supported. (*Id.*) After noting that Murdock had no history of psychiatric care prior to June 2006, the ALJ stated: "There is no indication in the record of cognitive limitations, social isolation or gross emotional irregularities,

there is no history of bizarre, aberrant or harmful behavior, and she has not been the subject of court-ordered mental health proceedings." (*Id.*)

Based on the evidence, the ALJ concluded that Murdock's mental impairment "[had] not led to restrictions in her activities of daily life and she [had] not experienced episodes of decompensation, but that she [had] a mild degree of difficulty in her abilities to maintain (1) social functioning and (2) maintain concentration, persistence or pace." (Tr. 20.); see 20 C.F.R. §§ 404.1520a(c); 416.920a(c). He further commented that there was no indication that "minimal increases in mental demands or environmental changes would cause decompensation." (*Id.*) The ALJ concluded that Murdock's mental impairment was not severe and that she had no work-related mental limitations. (Tr. 19.)

At step three, the ALJ determined that none of the impairments that he had found to be severe, either singly or in combination, met or equaled the criteria of any of the impairments in the Listing. (Tr. 20, citing 20 C.F.R. Part 404, Subpart P, Appendix 1.) He then proceeded with a three-page detailed analysis of the evidence that he considered in determining Murdock's work-related limitations. (Tr. 15-19.) The ALJ found that Murdock retained the exertional capacity for the sustained performance of modified sedentary work, stipulating that Murdock "[could] not use her upper extremities more than frequently and [that] she must avoid extreme cold temperatures." (Tr. 17.) The ALJ found no work-related mental limitations. (Tr. 19.)

Based on the VE's testimony, the ALJ found at step four that Murdock was capable of performing her past relevant work as a claims representative and as a customer service coordinator. (Tr. 22.) The ALJ specifically noted that Murdock did not have the limitations regarding detailed work instructions that had been posited during the administrative hearing.

(Tr. 19.) The ALJ then concluded that Murdock had not been disabled within the meaning of the Act at any relevant time through the date of the decision. (Tr. 21.)

## V. DISCUSSION

<u>Whether the ALJ's finding that Murdock's mood disorder is not a severe mental impairment is supported by substantial evidence.</u>

Murdock asserts that the ALJ's decision that her mental impairment was not severe is unsupported by substantial evidence. (Plaintiff's Brief ("Pl. Br.") at 1.) She does not, however, argue that the ALJ failed to apply the appropriate severity standard set forth in *Stone*. (Plaintiff's Reply Brief ("Pl. Rep. Br.") at 1-2.) *See Stone*, 752 F.2d at 1101 ("An impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work."). Murdock contends that both Miller and her treating psychiatrists at JPS found her mood disorder to be more than a slight abnormality, rendering the ALJ's decision unsupported by substantial evidence. (Pl. Br. at 1.) Murdock further argues that the ALJ improperly substituted his own lay opinion that Murdock's mental impairment was not severe for the uncontroverted medical opinions of Miller, the State Agency medical consultant, and the JPS psychiatrists. (Pl. Br. at 11.)

### A. State Agency Medical Consultant Opinion

Findings of fact made by State Agency medical or psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence from non-examining sources at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996). Pursuant to Social Security Ruling 96-6p, the ALJ

13

and the Appeals Council are not bound by the State Agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. Social Security Ruling 96-6p, 1996 WL 374180, at *2. Additionally, the ALJ may not arbitrarily reject uncontroverted medical testimony. *Green v. Shalala*, 852 F.Supp. 558, 568 (N.D. Tex. 1994) (citing *Strickland v. Harris*, 615 F.2d 1103, 1110 (5th Cir. 1980)).

In this case, the ALJ considered Miller's July 2006 findings that Murdock had a severe mental impairment and "could understand, remember and carry out detailed, but not complex, job instructions." (Tr. 18, citing 20 C.F.R. §§ 404.1527, 416.927 and Social Security Ruling 96-6p.) The ALJ then concluded that Miller's opinion was not supported in light of the additional evidence before him. (*Id.*) It is clear that Miller issued her opinion in July 2006 without having the opportunity to review the complete record. (*See* Tr. 109-11.) The ALJ determined that Murdock's subsequent treatment records at JPS demonstrated that "she quickly responded to routine care and medications and stabilized at a very functional level." (Tr. 19.) The Court finds that the ALJ satisfied his obligations under Social Security Ruling 96-6p and that there is substantial evidence to support his determination concerning Murdock's treatment records. Thus, the ALJ did not improperly rejected Miller's findings. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability.").

B. Treating Source Opinion

Murdock next argues that the ALJ improperly evaluated her treating source opinions. (Pl. Br. at 1.) Murdock refers to her fair concentration ratings, her June 2006 GAF score of 41-50, and her May 2007 GAF score of 55 as evidence that the JPS psychiatrists found her mood

disorder to be more than a slight abnormality. (Pl. Br. at 7-9.) She argues that these moderate symptoms are at odds with the ALJ's decision that her mental impairment did not satisfy the *de minimis* standard of severity. (Pl. Br. at 9.)

When considering Murdock's June 2006 psychiatric exam at JPS, the ALJ noted that "[Murdock] had fair concentration, but a good memory and no intellectual deficits." (Tr. 18.) The ALJ also commented that Murdock's GAF score of 41-50 was indicative of someone with a serious functional limitation. (*Id.*) By comparison, after Murdock was prescribed antidepressants in June 2006, the ALJ remarked that her September 2006 GAF score of 60 was marginally indicative of someone with a moderate functional limitation. (*Id.*) Discussing Murdock's follow-up visits, the ALJ observed that JPS psychiatrists noted decreasing symptomology. (*Id.*) Indeed, after Murdock was prescribed antidepressants, the JPS records indicated that she no longer had moderate symptoms and that her daily activities, relationships, and social functioning were no longer moderately affected by her mood disorder. (Tr. 242, 246, 250, 254, 259, 398, 402, 429, 434, 438.) The ALJ further observed that JPS records showed that Murdock had no harmful ideations, psychotic behavior, significant irregularities, or cognitive limitations during her treatment. (*Id.*) The ALJ then determined that Murdock had stabilized at a very functional level with medication, but still had mild limitations concerning concentration, persistence, and pace, as well as social functioning. (Tr. 19-20.) Overall, the ALJ concluded that Murdock's mental impairment "did not for any twelve-month period have more than a minimal effect on her ability to perform either her activities of daily life or basic work activities." (Tr. 19.)

Given the ratings scale used by the JPS psychiatrists, which only allowed for "good," "fair," or "poor" ratings, Murdock's fair concentration ratings were not inconsistent with the ALJ's determination that Murdock had mild difficulties maintaining concentration, persistence and pace. (*See, e.g.*, Tr. 250.) Furthermore, the ALJ did not err by focusing on Murdock's decreased symptoms in subsequent records, rather than her June 2006 GAF score, to conclude that she stabilized at a very functional level with medication. *See Johnson*, 864 F.2d at 348 (explaining that an impairment reasonably remedied or controlled by medication cannot serve as a basis for a finding of disability).

Lastly, with regard to Murdock's May 2007 GAF score of 55, the Court notes that federal courts have declined to find a correlation between an individual's GAF score and the ability or inability to work. *See* 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000) (Commissioner declines to endorse the GAF scale for use in Social Security and SSI disability programs, and states that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"). *See, e.g., Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005); *Glover v. Massanari*, 2001 WL 1112351, at *7 (N.D. Tex. Sept. 14, 2001). Thus, Murdock's May 2007 GAF score is not irrefutable evidence that the ALJ's decision is erroneous or unsupported. During her May 2007 visit, consistent with the ALJ's observations regarding decreased symptomology, the JPS psychiatrist found no symptoms of depression or anxiety, or any symptoms affecting her daily activities, relationships, or social functioning. (Tr. 246.) *See White v. Astrue*, 2009 WL 763064, at *11 (N.D. Tex. 2009) (finding substantial evidence to support ALJ's decision that claimant did not have a severe mental impairment where claimant's GAF score of 51 accompanied an essentially

unremarkable mental status examination). Furthermore, and also in accordance with the ALJ's observations, the psychiatrist stated that Murdock was stable on her medications. (Tr. 247.)

An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citations omitted). The Court finds that the ALJ's decision that Murdock's mood disorder was not a severe mental impairment is supported by substantial evidence.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 24, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific

written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 24, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**

**AUGUST 3, 2010**

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE